**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| GARY STADING | § | |
| | § | |
| v. | § | |
| | § | Case No. 5:24-CV-00066-JRG-JBB |
| TEXAS A&M UNIVERSITY– | § | |
| TEXARKANA, EMILY CUTRER, and | § | |
| MELINDA ROSEMARY ARNOLD | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This employment dispute is before the Court on Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint.[1] Dkt. No. 17. For the reasons discussed herein, the undersigned recommends the motion be **GRANTED IN PART and DENIED IN PART**. Regarding Plaintiff Gary Stading's claims against Individual Defendants in their *official capacities*, the undersigned recommends the motion pursuant to Rule 12(b)(1) as to any monetary claims be granted, but the Rule 12(b)(1) motion as to any claims for prospective relief be denied without prejudice. Regarding Stading's claims against Individual Defendants in their *individual capacities*, the undersigned recommends the Rule 12(b)(6) motion to dismiss based on qualified immunity be denied without prejudice to refiling. The undersigned recommends the remainder of the Rule 12(b)(6) motion be denied, including Stading's claims against TAMUT. Specifically, Stading should be allowed to replead more clearly any § 1983 claim for prospective relief and to amend to defeat qualified immunity, as outlined below.

**I. BACKGROUND**……………………………………………………………………3
**II. LEGAL STANDARDS**……………………………………………………………4
    A. Federal Rule of Civil Procedure 12(b)(1)……………………………………4

---

[1] The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636.

B.  Federal Rule of Civil Procedure 12(b)(6)……………………………………………5

**III. APPLICABLE LAW**…………………………………………………………………………6

A.  Sections 1981 and 1983 (asserted against Individual Defendants)………………………6

B.  Title VII of the Civil Rights Act of 1964 (asserted against TAMUT) …………………8

**IV. DISCRIMINATION CLAIMS UNDER §§ 1981 AND 1983 AGAINST INDIVIDUAL DEFENDANTS**…………………………………………………………………10

A.  Stading's claims………………………………………………………….....................10

B.  Official-capacity claims………………………………………………...……………12

1.  Eleventh Amendment immunity under Rule 12(b)(1) (monetary and prospective relief against Individual Defendants)…………………………………………12

a.  Assertions……………………………………………………………12

b.  Applicable law……………………………………………………...13

c.  Analysis…………………………………………………………………14

2.  Sufficiency of the allegations (whether amendment to allege prospective relief against Individual Defendants would be futile)………………………………16

a.  Assertions……………………………………………………………16

b.  Applicable law……………………………………………………...18

c.  Analysis…………………………………………………………………18

3.  Statute of limitations……………………………………………………20

a.  Assertions……………………………………………………………20

b.  Applicable law……………………………………………………...21

c.  Analysis…………………………………………………………………22

4.  Summary……………………………………………………………………25

C.  Individual-capacity claims………………………………………………26

1.  Assertions……………………………………………………………………26

2.  Applicable law……………………………………………………………27

3.  Sufficiency of the allegations that, but for race, Stading would not have suffered the loss of a legally protected right……………………………………………28

4.  Qualified immunity………………………………………………………30

a.  Assertions……………………………………………………………30

b.  Facts showing Individual Defendants violated a statutory or constitutional right..30

c.  Facts showing the right allegedly violated was "clearly established" at the time of the alleged violation……………………………………………………34

5.  Summary……………………………………………………………………36

**V. TITLE VII CLAIM AGAINST TAMUT**…………………………………………………37

A.  Failure to exhaust administrative remedies……………………………………………37

1.  Assertions……………………………………………………………………37

2.  Applicable law……………………………………………………………37

3.  Analysis……………………………………………………………………39

B.  Sufficiency of the allegations……………………………………………………44

1.  Assertions……………………………………………………………………44

2.  Applicable law……………………………………………………………44

3.  Analysis……………………………………………………………………46

**VI. RECOMMENDATION**……………………………………………………………47

2

# I. BACKGROUND

Plaintiff Gary Stading ("Stading"), the former Dean of the College of Business, Engineering and Technology at Texas A&M University – Texarkana ("TAMUT"), alleges racial discrimination against TAMUT pursuant to Title VII of the Civil Rights Act of 1964 and against "Individual Defendants," Former TAMUT President Emily Cutrer and TAMUT Provost and Vice President Melinda Arnold, pursuant to 42 U.S.C. §§ 1981 and 1983. In his First Amended Complaint, Stading alleges that in July 2021, despite his having had "an excellent record of achievement and success" in his role as Dean and having recently received positive performance reviews from Individual Defendants, Individual Defendants removed Stading from his position as Dean because of his "race, White." Dkt. No. 12, ¶¶ 14-15, 17-20. Stading alleges that "[i]n the wake of national and campus-wide unrest related to race relations, Cutrer undertook a campaign to remake TAMUT's demographics." *Id.*, ¶ 12.

According to Stading, Arnold provided Stading a pre-written resignation at his dismissal meeting and informed Stading that he would be involuntarily dismissed from his role as Dean if he did not resign. *Id.*, ¶ 16. After Stading refused to resign, "Arnold terminated his position as Dean." *Id.*, ¶ 17. Stading alleges Individual Defendants replaced him with a "South Asian female." *Id.*, ¶ 21. According to Stading, Individual Defendants' "discriminatory behavior" in dismissing him from his position as Dean on the basis of race "has been the result of racial bias and discrimination by Defendants Cutrer and Arnold." *Id.*, ¶¶ 24, 25. Stading alleges that "[b]ut-for his race," he would have continued in his role as Dean until his retirement. *Id.*, ¶¶ 22, 26. Stading seeks back and front pay, compensatory damages, reasonable attorneys' fees and costs, and such "other relief as the Court shall deem just and proper." *Id.* at 5.

3

TAMUT and Individual Defendants (collectively, "Defendants") move to dismiss Stading's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Pursuant to Rule 12(b)(1), Defendants assert that to the extent Individual Defendants are sued for damages in their official capacities, they are entitled to Eleventh Amendment sovereign immunity. Additionally, pursuant to Rule 12(b)(6), Defendants contend Stading has failed to state actionable claims under § 1981 (because any § 1981 claims against Individual Defendants in their individual capacities are barred by qualified immunity; Stading fails to allege any "but for" race facts; and § 1981 is not an independent cause of action against state actors and must be brought through § 1983), § 1983 (because Stading fails to allege facts related to "custom or policy," and the claims are barred by the two-year statute of limitations), and Title VII (because the claim against TAMUT is time-barred for failure to exhaust administrative remedies and Stading fails to allege sufficient facts establishing Stading's removal from the Dean's position had anything to do with his race). With the exception of Defendants' motion to dismiss any monetary claims against Individual Defendants in their official capacities, Stading opposes all requested relief.

## II. LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). Because Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state, a defendant's motion to dismiss asserting Eleventh Amendment sovereign immunity is properly brought under Rule 12(b)(1). *Hopkins v. Wayside Sch.*, No. 23-50600, 2024 WL 3738478, at *4 (5th Cir. Aug. 9, 2024) (citation omitted). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint

4

alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, 281 F.3d at 161 (citation omitted). The plaintiff bears the burden of proof in establishing that jurisdiction does in fact exist. *Porretto v. City of Galveston Park Bd. of Trustees*, 113 F.4th 469, 481 (5th Cir. 2024) (citing *Ramming*, 281 F.3d at 161).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

## B.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Pfang v. Lamar Inst. of Tech.*, No. 1:23-CV-93, 2023 WL 5017204, at *8 (E.D. Tex. Aug. 5, 2023) (quoting *Ramming*, 281 F.3d at 161; also citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Id.* (quoting *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020)). "[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Id.* (quoting *Oscar Renda Contracting, Inc. v.*

*Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In evaluating motions to dismiss filed under Rule 12(b)(6), the court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). On the other hand, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

## III.  APPLICABLE LAW

### A.    Sections 1981 and 1983 (asserted against Individual Defendants)

In his amended complaint, Stading alleges he was subjected to unequal treatment by being dismissed from his position as Dean, and such "discriminatory behavior has been the result of racial bias and discrimination by Defendants Cutrer and Arnold" in violation of §§ 1981 and 1983. Dkt. No. 12 at 4. Section 1983 provides a private cause of action against any "person" who, "under color of" state law, deprives another of his federal rights. *Mackey v. Pigott*, No. 3:23-CV-233-DPJ-FKB, 2023 WL 7663300, at *3 (S.D. Miss. Nov. 14, 2023) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Sacks v. Texas S. Univ.*, No. CV H-18-3563, 2019

WL 13043644, at *7 (S.D. Tex. Aug. 29, 2019) (citing *Albright v. Oliver*, 114 S. Ct. 807, 811 (1994)).

Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts. . . and to the full and equal benefit of all laws. . . as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). The Civil Rights Act of 1991 added two subsections to § 1981. *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 404 (E.D.N.Y. 2010). Section 1981(b) now defines contractual formation and enforcement, protected by subsection (a), to include "the making, performance, modification, and *termination of contracts*, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* (quoting 42 U.S.C. § 1981(b)) (emphasis added).

Section 1981, like Title VII of the Civil Rights Act of 1964, "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Mitchell v. Sorenson Commc'n*, No. 3:23-CV-0185-L-BH, 2023 WL 8832813, at *2 (N.D. Tex. Dec. 1, 2023), *report and recommendation adopted*, 2023 WL 8851641 (N.D. Tex. Dec. 21, 2023), *aff'd*, No. 24-10052, 2024 WL 3043384 (5th Cir. June 18, 2024) (quoting *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990)). Employment discrimination claims brought under § 1981 are governed by the same framework applied to claims of employment discrimination brought under Title VII. *Molina v. Etech Glob. Servs. L.L.C.*, No. 9:21-CV-290-MJT-CLS, 2024 WL 4184299, at *4 (E.D. Tex. June 28, 2024), *report and recommendation adopted*, 2024 WL 3812282 (E.D. Tex. Aug. 13, 2024) (citing *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir. 1996))). However, one key difference between Title VII and § 1981 is that a § 1981 plaintiff "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally

protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation. . . and. . . lacks an exhaustion requirement."). Although the analysis is the same as employment discrimination claims brought under Title VII, contractual discrimination claims under § 1981 require the plaintiff to show: (1) that he is a member of a racial minority or different national origin;[2] (2) that defendant intended to discriminate on the basis of race or national origin; and (3) that discrimination concerned termination of an employment contract. *Molina*, 2024 WL 4184299, at *4 (citing *Shiyan Jiang v. Tex. Comm'n on Env't Quality*, 321 F. Supp. 3d 738, 750 (W.D. Tex. 2018)); *see also Nicholson v. W.L. York, Inc.*, No. 23-20440, 2024 WL 913378, at *3 (5th Cir. Mar. 4, 2024).

In the Fifth Circuit, a plaintiff cannot maintain a separate and independent cause of action under § 1981 against state actors. *Leger v. Jefferson Cnty., Texas*, No. 1:20-CV-00440, 2022 WL 2784461, at *2 (E.D. Tex. May 25, 2022). However, a plaintiff may "pursue a § 1983 cause of action against persons acting under color of state law in order to assert [his] substantive rights under § 1981." *Id.* (quoting *Oden v. Okitbbeha Cnty.*, 246 F.3d 458, 462 (5th Cir. 2001)).

**B.    Title VII of the Civil Rights Act of 1964 (asserted against TAMUT)**

Title VII provides for private causes of action arising out of employment discrimination and gives federal courts subject matter jurisdiction to resolve such disputes. *Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *2 (5th Cir. Oct. 12, 2023) (citing 42 U.S.C. §

---

[2] The Supreme Court has held that § 1981 will support a claim of reverse discrimination. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295–96 (1976); *see also Kokes v. Angelina Coll.*, 220 F. Supp. 2d 661, 665 (E.D. Tex. 2002) ("While the Fifth Circuit's prima facie standard for section 1981 requires the plaintiff to establish that he is a member of a racial minority, the Supreme Court has held that section 1981 prohibits racial discrimination against white persons as well as against racial minorities.").

2000e-5(f)). "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail. . . . However, because direct evidence of discrimination is rare, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases." *Clark v. City of Alexandria*, No. 23-30732, 2024 WL 4224357, at *9 (5th Cir. Sept. 18, 2024) (citing, among other cases, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that "evidentiary procedure," plaintiffs first must make a *prima facie* showing of discrimination by proving they "(1) are members of a protected group; (2) were qualified for the position at issue; (3) were discharged or suffered some adverse employment action by the employer; and (4) were replaced by someone outside their protected group or were treated less favorably than other similarly situated employees outside the protected group." *Id.* (citations omitted). Upon the plaintiff's making that *prima facie* showing, the defendant may rebut it "by articulating a legitimate, nondiscriminatory reason for [its] actions." *Id.* (quoting *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (citation omitted in *Clark*)). If the defendant does so, the plaintiff must show that the defendant's "proffered reason is [merely] a pretext for discrimination." *Id.*

At the pleading stage, however, a Title VII complaint "need not contain specific facts establishing a *prima facie* case." *McManus v. Amerijet Int'l, Inc.*, No. 23-13554, 2024 WL 4003391, at *3 (11th Cir. Aug. 30, 2024) (citation omitted). That's because the *prima facie* case is "an evidentiary standard, not a pleading requirement." *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). "[T]he prima facie case relates to an employee's burden of presenting evidence that raises an inference of discrimination," not to the threshold for surviving a motion to dismiss. *Id.* (citing *Swierkiewicz*, 534 U.S. at 510-11). Instead, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz*, 534 U.S. at 511.

## IV. DISCRIMINATION CLAIMS UNDER §§ 1981 AND 1983 AGAINST INDIVIDUAL DEFENDANTS

**A.    Stading's claims**

Before considering Defendants' jurisdictional argument, the Court clarifies the claims asserted against Individual Defendants in their individual and official capacities. Public officials may be sued under § 1983 in both their individual and official capacities. *Hill v. City of Monahans, et al.*, No. PE:24-CV-00012-DC-DF, 2024 WL 5038572, at *6 (W.D. Tex. Oct. 30, 2024), *report and recommendation adopted sub nom.*, 2024 WL 5010729 (W.D. Tex. Dec. 6, 2024). Stading's amended complaint does not state in which capacity he brings his  claims against Individual Defendants, creating confusion in the briefing as to the nature of Stading's claims. *See* Dkt. No. 17 at 10 (Defendants' motion stating the amended complaint is not clear whether Stading intends to sue Individual Defendants in their individual capacities under § 1981); *see also* Dkt. No. 22 at 4, 7 (Stading's response suggesting he brings "§ 1981" claims for monetary relief against Individual Defendants in their individual capacities and not, as Defendants claim, in their official capacities and further suggesting he also attempts to bring a "§ 1983 claim" for prospective relief against Individual Defendants in their official capacities).

Because of this confusion, Defendants argue that to the extent Stading is attempting to bring an independent cause of action under § 1981, he is precluded from doing so as a matter of law. Dkt. No. 17 at 10-11. As noted above, § 1981 creates a cause of action "against ***private*** employers to remedy discrimination in private employment contracts." *Mackey*, 2023 WL 7663300, at *3 (quoting *Oden*, 246 F.3d at 462) (emphasis added in *Mackey*). But a plaintiff may "assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Oden*, 246 F.3d at 463 (citation omitted); *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (holding "the express cause of action for damages created by § 1983 constitutes the

exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units"); *see also Escamilla v. Elliott*, 816 F. App'x 919, 922 (5th Cir. 2020) (stating plaintiffs must "assert causes of action against local government actors under § 1983 in order to obtain a monetary remedy for violations of civil rights protected by § 1981). And that is what Stading pleaded.

Liberally construing the amended complaint, Stading has pursued the § 1981 claims through the remedial provision of § 1983 by specifically alleging that Individual Defendants violated 42 U.S.C. §§ 1981, 1983. *See* Dkt. No. 12, ¶ 5 (alleging this action arises under Title VII and § 1981 and that "Plaintiff's claim against Defendants as state actors arises under United States Code, Title 42, § 1983"); *see also id.* at p. 4 (alleging Individual Defendants Cutrer and Arnold committed race discrimination "in violation of 42 USC Secs. 1981 and 1983"); *see also Wei-Ping Zeng v. Texas Tech Univ. Health Scis. Ctr. at El Paso*, No. EP-19-CV-99-KC, 2019 WL 4565101, at *6 n. 4 (W.D. Tex. July 29, 2019) (finding the plaintiff had pursued the § 1981 claims through the remedial provision of § 1983 by claiming "Defendants Rotwein and Lange. . . violated 42 U.S.C. §§ 1981, 1983") (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.9 (5th Cir. 2003)).

Even though Stading's amended complaint may not be a "model of clarity," the Fifth Circuit has cast doubt on "the formalistic approach taken by earlier cases in this circuit[ ]" regarding § 1981 claims. *See Escamilla*, 816 F. App'x at 923 (noting the complaint identified the "action" as "being brought under 42 U.S.C. § 1981 and § 1983" and reversing the district court's dismissal with prejudice to Escamilla's claim seeking relief for alleged violations of her § 1981 rights); *see also Graham v. Bluebonnet Trails Co*., 587 F. App'x 205 (5th Cir. 2014) ("We have doubts about the district court's denial of [the plaintiff's] section 1981 claim on the ground that she did not cite section 1983 as the procedural vehicle for asserting such a claim[.]"). Accordingly,

all § 1981 claims against Individual Defendants flow through § 1983, and Defendants' objection to any "independent cause of action" under § 1981 (Dkt. No. 17 at 10) is without merit.

Thus, Stading brings, pursuant to the procedural remedy of § 1983, claims against Individual Defendants in their *individual capacities* seeking to vindicate substantive § 1981 rights (hereafter, "individual-capacity claims"). And, as discussed in detail below, Stading also attempts to bring, under the *Ex parte Young* exception to state sovereign immunity, a claim under the procedural remedy of § 1983 to recover prospective relief against Individual Defendants in their *official capacities* for violation of Stading's right to be free from racial discrimination under § 1981 (hereafter, "official-capacity claims"). Dkt. No. 22 at 7-8 (stating sovereign immunity does not bar his § 1983 claims against Individual Defendants in their official capacities because he is entitled to seek reinstatement to his position). Having clarified the nature of Stading's claims against Individual Defendants, the Court addresses the official-capacity claims first, starting with Defendants' Rule 12(b)(1) challenge.

## B.    Official-capacity claims

### 1.    Eleventh Amendment immunity[3] under Rule 12(b)(1) (monetary and prospective relief against Individual Defendants)

#### a.    Assertions

Defendants raise a Rule 12(b)(1) jurisdictional challenge as to only one aspect of this case—Stading's claims, if any, for monetary relief against Individual Defendants in their official

---

[3] While sovereign immunity is often referred to as "Eleventh Amendment immunity," the Supreme Court has noted that such a phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Liu v. Texas State Univ.*, No. A-18-CV-00938-LY, 2019 WL 3804491, at *3 n.5 (W.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 13253483 (W.D. Tex. Aug. 30, 2019) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)). As the Supreme Court explained in *Alden*, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Id.* Regardless, courts continue to use "Eleventh Amendment immunity" and "sovereign immunity" interchangeably. *Id.*

12

capacities.[4] Defendants claim TAMUT's Eleventh Amendment immunity extends to Individual Defendants in their official capacities and protects them from Stading's claims seeking monetary relief. Dkt. No. 17 at 5-6, 11. Defendants further argue Stading has failed to properly plead for reinstatement or other prospective relief and any claim is limited to monetary damages and thus is barred by sovereign immunity. *Id.* at 11-12.

### b. Applicable law

State sovereign immunity typically prevents federal courts from exercising subject matter jurisdiction over suits against a state, its agencies, or its officials unless either the state has waived its immunity or Congress has abrogated it.[5] *Doe v. Harrell*, 841 F. App'x 663, 668 (5th Cir. 2021) (citing *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015)). Under Texas law, state universities are considered agencies of the State of Texas and enjoy sovereign immunity. *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021) ("Texas A&M is an agency of the State of Texas, so a suit against the former is a suit against the latter."). The immunity also extends to suits against a state official in his or her official capacity, when the award is to be paid from the state treasury. *Smith v. Univ. of Texas at San Antonio*, No. SA-23-CV-00538-

---

[4] Defendants do not argue the Court lacks jurisdiction over any of Stading's claims against Individual Defendants in their individual capacities. Nor do Defendants urge dismissal on Rule 12(b)(1) grounds of the Title VII claims against TAMUT. The Fifth Circuit has repeatedly recognized that Congress clearly abrogated the States' Eleventh Amendment immunity in enacting Title VII. *Smith v. Univ. of Texas at San Antonio*, No. SA-23-CV-00538-OLG, 2024 WL 4256461, at *7 (W.D. Tex. Aug. 21, 2024), *report and recommendation adopted as modified sub nom.*, 2024 WL 4256444 (W.D. Tex. Sept. 18, 2024) (citing *Ussery v. State of La. on Behalf of La. Dep't of Health & Hosps.*, 150 F.3d 431, 434 (5th Cir. 1998)).

[5] Congress has not abrogated state sovereign immunity for claims under § 1981 or § 1983. *Wei-Ping Zeng v. Texas Tech Univ. Health Scis. Ctr. at El Paso*, No. EP-19-CV-99-KC, 2019 WL 4565101, at *6 (W.D. Tex. July 29, 2019) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) (Section 1981 does not abrogate sovereign immunity); *Clark v. Tarrant County*, 798 F.2d 736, 743 (5th Cir. 1986) (Section 1983 does not abrogate sovereign immunity)). Nor has Texas waived its immunity—that is, consented to suit, notwithstanding its immunity. *Id.* (citing *Jackson v. Tex. Forest Serv.*, 194 F. Supp. 2d 566, 570 (E.D. Tex. 2001) (Texas has not waived immunity for § 1981 claims); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (Texas has not waived immunity for § 1983 claims)).

OLG, 2024 WL 4256461, at *7 (W.D. Tex. Aug. 21, 2024), *report and recommendation adopted as modified sub nom.*, 2024 WL 4256444 (W.D. Tex. Sept. 18, 2024) (citations omitted). However, there is also a well-settled corollary—associated with *Ex parte Young*, 209 U.S. 123 (1908)—that allows suits "for declaratory or injunctive relief against state officers in their official capacities." *Gibbons v. Gibbs*, 99 F.4th 211, 214 (4th Cir. 2024) (quoting *Reed v. Goertz*, 598 U.S. 230, 234 (2023)).

### c. **Analysis**

Defendants argue sovereign immunity bars any official-capacity claims against Individual Defendants for money damages. Stading concedes as much (Dkt. No. 22 at 7), and Defendants are correct.[6] *Mackey*, 2023 WL 7663300, at *3. The law provides that "[s]uits against state officials in their official capacity" are "treated as suits against the State" and are thus barred by sovereign immunity to the extent that they seek monetary relief. *Gibbons*, 99 F.4th at 214 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, the undersigned recommends Defendants' Rule 12(b)(1) motion be granted as to any claims for monetary damages Stading attempts to assert against Individual Defendants in their official capacities. Any such claims should be dismissed without prejudice for lack of subject matter jurisdiction.

However, Stading's official capacity claims should not be dismissed in their entirety. As noted above, Stading seeks to invoke the exception to state sovereign immunity for certain cases seeking prospective relief laid out in *Ex parte Young*. Stading claims he is entitled to seek reinstatement to his position as Dean. In the Fifth Circuit, "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a

---

[6] And even without the sovereign immunity defense, "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of [§ 1983] because they assume the identity of the government that employs them." *Mackey*, 2023 WL 7663300, at *3 (quoting *Hafer v. Melo*, 502 U.S. 21, 27 (1991)).

claim for **prospective relief** designed to end a continuing violation of federal law." *Berry v. Texas Woman's Univ.* ("*Berry I*"), No. 4:19-CV-00409-RWS-CAN, 2020 WL 9936141, at *7 (E.D. Tex. Feb. 28, 2020), *report and recommendation adopted*, 2020 WL 10354078 (E.D. Tex. Mar. 18, 2020) (quoting *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008) (emphasis added in *Berry I*); also citing *Anderson v. Valdez*, 913 F.3d 472, 479 (5th Cir. 2019)); *see also Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) (noting that "injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar"). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

Defendants argue Stading has not properly pleaded for reinstatement. Dkt. No. 23 at 5 ("Plaintiff has had at least two opportunities to properly plead for reinstatement and has failed to take advantage of either."). Stading responds that his amended complaint requests the Court grant him various money damages, as well as "such other relief as the Court deems proper," which Stading argues includes reinstatement. Dkt. No. 22 at 9 (citing Dkt. No. 12 at 5). Stading also requests leave to amend to explicitly allege reinstatement, to the extent the Court finds that any such request must be explicitly stated. *Id.*

If properly pleaded, a claim for prospective relief against these state actors in their official capacities survives a jurisdictional challenge. *See Berry I*, 2020 WL 9936141, at *4. The magistrate judge in *Berry I*, noting the confusion in that case regarding whether the plaintiff had "in fact [sought] prospective relief," allowed the plaintiff an opportunity to replead to more clearly request such prospective relief. *Id.* (citations omitted); *see also id.* at *11 ("Here, the Court finds leave to

amend should be freely given, as set forth herein. Plaintiff has not received a prior opportunity to cure deficiencies. There is no undue prejudice to Defendants because the Court stayed discovery and has not entered a scheduling order."). Similarly here, Stading has not clearly pleaded for reinstatement, and leave to amend should be freely given. *Whitmire v. Victus Ltd.*, 212 F.3d 885, 889 (5th Cir. 2000) (explaining the propriety of allowing amendment to cure jurisdictional defects should be governed by the same standard as other amendments to pleadings and stating that in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of allowance of the amendment, futility of amendment, etc." the leave sought should be "freely given"). Because this is the Court's first opportunity to assess Stading's claims, Stading should be permitted an opportunity to amend his § 1983 claim against Individual Defendants in their official capacities to more clearly request prospective relief unless consideration of Defendants' Rule 12(b)(6) arguments shows futility of amendment. *Berry I*, 2020 WL 9936141, at *4; *see also Foley*, 355 F.3d at 340 (recommending that on remand the district court consider granting leave to amend the pleadings to clarify the relationship between §§ 1981 and 1983 in connection with the plaintiff's retaliation claim). Because, as explained below, Defendants' specific Rule 12(b)(6) arguments are without merit as to any properly pleaded request for reinstatement, Stading should be allowed to amend his complaint to explicitly seek reinstatement.

2.    **Sufficiency of the allegations (whether amendment to allege prospective relief against Individual Defendants would be futile)**

   a.    **Assertions**

Defendants argue that, even if Stading were to properly allege a claim for prospective relief sufficient to survive a jurisdictional challenge, Stading's official-capacity claims against Individual Defendants should be dismissed under Rule 12(b)(6) for failure to state a claim.

16

Specifically, Defendants argue that Stading cannot proceed under a theory of *respondeat superior*. According to Defendants, Stading must satisfy the "custom or policy" test fashioned against a governmental entity under § 1983.[7] Dkt. No. 17 at 12 (citation omitted).

Stading's response does not address Defendants' arguments regarding "custom or policy," presumably because Stading does not attempt to bring a *Monell* claim against Individual Defendants in their official capacities.[8] *See* Dkt. No. 22 at 6 (Stading indicating, in relation to his § 1981 claims (via § 1983) that he "does not claim that he was disparately impacted by some nominally race-neutral policy. Instead, he alleges, rather plainly, that Cutrer wished to employ fewer White employees and, in service of this goal, terminated Plaintiff in spite of his excellent employment reviews, two of which occurred within three months of Plaintiff's termination"). Rather, as explained above, Stading attempts to bring under *Ex parte Young* a claim to recover prospective relief against Individual Defendants in their official capacities. However, Stading's amended complaint as it stands does not clearly provide the necessary allegations to support an *Ex parte Young* claim.

---

[7] In their motion to dismiss, Defendants also argued "Plaintiff's § 1983 claims against Individual Defendants are barred by qualified immunity" for the same reasons Stading's § 1981 claims against Individual Defendants are barred by qualified immunity. Dkt. No. 17 at 13. Stading clarified in his response that he is only asserting § 1983 claims against Individual Defendants in their official capacities, seeking prospective relief. Dkt. No. 22 at 7-8. Qualified immunity attaches only to officials in their individual, not their official, capacities. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003) (citing *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir.1990)); *see also id.* at 338. Thus, the Court does not address whether Stading's official-capacity § 1983 claims against Individual Defendants are barred by the defense of qualified immunity.

[8] A *Monell* claim brought against a governmental entity pursuant to 42 U.S.C. § 1983 requires, among other elements, allegations of an official policy or custom and a constitutional violation whose "moving force" is that policy or custom. *Dixon v. Plano Indep. Sch. Dist.*, No. 4:22-CV-148-SDJ, 2023 WL 5434761, at *7 (E.D. Tex. Aug. 23, 2023) (citations omitted).

### b.  Applicable law

In the public-employment context, the Fifth Circuit "has always treated *Ex parte Young* as an appropriate vehicle for pursuing reinstatement to a previous job." *Mackey*, 2023 WL 7663300, at *4 (quoting *Nelson v. University of Texas at Dallas*, 535 F.3d 318, 322-24 (5th Cir. 2008) (concluding that reinstatement remedies an ongoing violation) (emphasis removed)); *see also Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020). To properly assert an *Ex parte Young* lawsuit, a lawsuit must: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Berry v. Texas Woman's Univ.* ("*Berry II*"), 528 F. Supp. 3d 579, 597 (E.D. Tex. 2021) (quoting *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020)).

### c.  Analysis

Stading appears to allege all three elements in his amended complaint, but in order for the *Ex parte Young* exception to apply in a particular case, the plaintiff must show that the named defendants possess the authority to reinstate the terminated employee. "*Ex Parte Young* only permits injunctions against state officials who 'have some connection with the enforcement of the act' or are 'specially charged with the duty to enforce' the law at issue." *Smith v. Univ. of Texas at San Antonio*, No. SA-23-CV-538-OLG, 2024 WL 4256444, at *8 (W.D. Tex. Sept. 18, 2024) (quoting *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) (quoting *Ex parte Young*, 209 U.S. at 157–58)). Logically, this same reasoning should apply if the issue is reinstatement as dean rather than reinstatement as an employee (*i.e.*, a party would need to show the named defendants have the authority to reinstate him as dean).

The Texas Education Code vests the power to "employ and discharge" with the Board of Regents of the Texas State University System, and the Board is not a party to this lawsuit. *Liu v.*

*Texas State Univ.*, No. A-18-CV-00938-LY, 2019 WL 3804491, at *6 (W.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 13253483 (W.D. Tex. Aug. 30, 2019) (citing Tex. Educ. Code § 95.21(a); *Ayers v. Romo*, 2012 WL 12872435, at *1 (W.D. Tex. March 19, 2012) (finding that only Board of Regents of the University of Texas system had the power to reinstate former associate professor)); *see also Smith*, 2024 WL 4256461, at *8.[9] Unlike these cases, Stading does not allege he was terminated as an employee of TAMUT, rather Stading alleges he was removed from his position as Dean.

In any event, Stading's amended complaint fails to allege any facts showing that Individual Defendants have the power to reinstate him to the position as Dean. *See* Dkt. No. 12, ¶ 3 (alleging Cutrer "was" the President of TAMUT). As currently pleaded, Stading's claim for prospective relief, even if explicitly requested, would not fall within the *Ex parte Young* exception. *Liu*, 2019 WL 3804491, at *6 (citing cases). However, in addition to amending to more clearly request prospective relief, Stading should be permitted an opportunity to amend his official-capacity claims against Individual Defendants to the extent he can plausibly allege facts showing that Cutrer and/or Arnold have the authority to reinstate his position as Dean or, if warranted, seek leave to amend to add the person or entity that has such authority. *See Smith*, 2024 WL 4256444, at *1.

---

[9] In *Smith*, the defendants argued the plaintiff could not sue Dean Browning and President Eighmy for injunctive relief because they did not have legal authority to award reinstatement, as only the Regents could grant or reinstate tenure. *Smith*, 2024 WL 4256461, at *8. The magistrate judge held "Browning's past recommendation of termination does not give rise to an authority to reinstate Smith and restore his tenure." *Id.* at *9. According to the magistrate judge, the "same can be said for President Eighmy" because the Texas Education Code vests the power to "employ and discharge" with the Regents, not the president of a university. *Id.* (citing *Liu*, 2019 WL 3804491, at *6 (citing Tex. Educ. Code § 95.21(a))). Noting the plaintiff had not "provided the Court with any basis to conclude that Dean Browning and President Eighmy have the authority to reinstate his tenure," the magistrate judge recommended the plaintiff's § 1983 claims for prospective injunctive relief against Browning and Eighmy in their official capacities be dismissed as barred by the Eleventh Amendment. *Id.* at *10. However, the magistrate judge held the plaintiff could pursue injunctive relief against the individual regents in their official capacities, noting the Board of Regents had been named in the complaint. *Id.* at *11.

As noted above, Defendants suggest any claims for prospective relief against Individual Defendants would fail because § 1983 does not support vicarious liability through *respondeat superior*. However, as long as the relief sought against state officials in their official capacities is "declaratory or injunctive in nature and prospective in effect," a § 1983 claim asserting a violation of the plaintiff's federal constitutional rights may proceed in federal court. *Bagwell v. Livingston*, No. SA-15-CV-584-DAE-HJB, 2016 WL 393553, at *2 (W.D. Tex. Feb. 1, 2016) (quoting *Nigen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)); *see also Berry II*, 528 F. Supp. 3d at 600-01 (the magistrate judge rejected the defendants' argument that the plaintiff's § 1983 claims for prospective relief under *Ex parte Young* should be dismissed "because there is no vicarious liability," noting the defendants could not avail themselves of the doctrine of *respondeat superior* or other theories of vicarious liability in their official capacities for claims for relief prospective in nature). Defendants' argument is without merit. Stading does not have to satisfy the "custom or policy" test fashioned against a governmental entity under § 1983 in order to properly allege a claim for prospective relief against Individual Defendants in their official capacities.

### 3.    Statute of limitations

#### a.    Assertions

Defendants further assert all of Stading's claims against Individual Defendants "in their official and individual capacities" are "time-barred under § 1983 in their entirety." Dkt. No. 17 at 14. Relying on the Fifth Circuit's unpublished decision in *Jones v. Texas Juv. Just. Dep't*, 698 F. App'x 215 (5th Cir. 2017), Defendants argue Stading's claims are barred by the two-year

limitations period of Texas Civil Practice and Remedies Code § 16.003(a) generally applicable to § 1983 claims.[10] Dkt. No. 23 at 6.

Relying on other "precedent from this District," Stading asserts his claims are governed by the four-year statute of limitations of 28 U.S.C. § 1658. Dkt. No. 22 at 9-10 (citing *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F.Supp.2d 787 (E.D. Tex. 2013).[11] According to Stading, the statute of limitations for a § 1983 claim "comes from the underlying claim being asserted," which in this case involves alleged racial discrimination in the employment context. *Id.* at 10.

### b.  Applicable law

Neither § 1981 nor § 1983 carries an explicit statute of limitations. *Chambers v. N. Carolina Dep't of Just.*, 66 F.4th 139, 141 (4th Cir. 2023). Typically, in such cases, "federal courts should select the most appropriate or analogous state statute of limitations." *Id.* (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)). In the Fifth Circuit, personal injury claims are considered the most analogous for §§ 1981 and 1983. *Hardy v. Carthage Indep. Sch. Dist.*, No. 2:19-cv-00277-JRG-RSP, 2022 WL 21747451, at *1 (E.D. Tex. Feb. 3, 2022) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). Personal injury claims have a two-year statute of limitations in Texas, so typically claims under §§ 1981 and 1983 have a two-year statute of limitations. *Id.* (citing *Piotrowski*, 237 F.3d at 576); *see also Fullen v. Galveston Indep. Sch.*

---

[10] Defendants assert any § 1983 claim asserted by Stading against Individual Defendants accrued on the date that TAMUT informed Stading of the decision to remove him as Dean on July 29, 2021. According to Defendants, because Stading did not file this case until May 1, 2024, over two years after the injury accrued, any racial discrimination claims asserted through § 1983 against Individual Defendants are time-barred. Dkt. No. 17 at 14.

[11] In *Gallentine*, the court stated there was "some doubt in the Fifth Circuit as to whether a § 1983 claim asserting rights under § 1981(b) is governed by a two- or four-year statute of limitation." *Gallentine*, 919 F.Supp.2d at 815 n. 10. Ultimately, the court applied a four-year statute of limitations. *Id.* (citing, among other cases, *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008)).

*Dist.*, No. CV G-07-0194, 2007 WL 9754296, at \*5 (S.D. Tex. Aug. 17, 2007) (noting that before 1990 the time for filing § 1981 claims was also determined by reference to the most analogous state statute of limitations).

In 1990, however, Congress enacted 28 U.S.C. § 1658, which established a catchall four-year statute of limitations for federal claims "arising under" any act of Congress that was enacted after December 1, 1990, unless the act provided its own statute of limitations. *Chambers*, 66 F.4th at 141-42 (citing 28 U.S.C. § 1658(a)). Where § 1658(a) applies, its four-year statute of limitations supersedes any analogous state-law limitations period for purposes of claims brought pursuant to federal law. *Id.* at 142.

### c. Analysis

The determinative question is "whether the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990," and thus presumably subject to a two-year limitation period, "or whether [plaintiff's] claims necessarily depend on a subsequent amendment" to that statute, and thus subject to a four-year limitation period. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Though the Fifth Circuit has never answered in a published opinion the central question of whether to apply § 1658's four-year limitations period to a § 1981 claim or whether § 1983's two-year limitations period applies, the better view is that Stading's claims are subject to the four year limitations period. *See Hardy*, 2022 WL 21747451, at \*3 (holding "Plaintiff's section 1981 post-employment discrimination claim should be given a four-year statute of limitations and not be considered time barred").[12]

To start, Stading's discrimination claims are based on *post-contract-formation* conduct. Defendants provide the timeline: Stading "was hired by TAMUT as Professor of Supply Chain

---

[12] Because the *Hardy* case was settled prior to District Judge Gilstrap's consideration of the objections to Magistrate Judge Payne's Report and Recommendation, the report was never adopted.

Management and Dean of the College of Business on July 13, 2015;" "received an interim appointment as Provost and Vice President for Academic Affairs on July 18, 2016;" became the Dean of the College of Business, Engineering and Technology in 2017; and "was removed as Dean and returned to his full-time tenured faculty appointment as Professor of Supply Chain Management" on September 1, 2021. Dkt. No. 17 at 1-2. Stading claims his *post-contract* removal as dean was because of his race and thus subjected him to "unequal treatment," "discriminatory behavior" and "racial bias." Dkt. No. 12, ¶¶ 24-26.

Post-contract formation claims are actionable under § 1981 due to the Civil Rights Act of 1991, which "expanded § 1981 to prohibit race discrimination *post-contract formation, including in the termination of contracts*." *Chambers*, 66 F.4th at 141 & n.3 (citing *Jones*, 541 U.S. at 373) (emphasis added). Thus, because the 1991 amendment to § 1981 "made possible" Stading's claims based on this post-contract-formation conduct, Stading's claims against Individual Defendants brought pursuant to the procedural remedy of § 1983 seeking to vindicate substantive § 1981 rights are subject to a four-year statute of limitations period under 28 U.S.C. § 1658. *See Chambers*, 66 F.4th at 143; *see also Rothrock v. Gorman*, No. 3:12-CV-00241, 2013 WL 3461913, at *5 (S.D. Tex. July 1, 2013) ("In sum, the four-year statute of limitations that governs claims under section 1981 as amended by the Civil Rights Act of 1991 applies in this case even though the claims were asserted through section 1983. Accordingly, Rothrock's suit is timely because it was filed within four years of the retaliatory act at issue—her termination on October 15, 2008.").

Several other courts have embraced similar reasoning or reached a similar result. *Hardy*, 2022 WL 21747451, at *3 (cited above); *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 367–68 (5th Cir. 2008) (per curiam) (unpublished) ("[I]f Mitchell's causes of action arise under a federal statute enacted after December 1, 1990, we must apply a four-year statute of

limitations.");[13] *Okoro v. Cook Cnty. Health & Hosp. Sys.*, No. 19-CV-06061, 2021 WL 2413152, at *5 (N.D. Ill. June 14, 2021) (finding the plaintiff's post-formation § 1981 discrimination claims against a public employer were only made possible by the Civil Rights Act of 1991's amendment to § 1981 and were subject to § 1658's four-year statute of limitations, even though they were brought under § 1983); *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337-39 (11th Cir. 2008) (findings Baker's claims against a school board were "made possible by a post–1990 enactment" and "therefore [are] governed by § 1658's 4–year statute of limitations"); *Chambers*, 66 F.4th at 141-42 (finding that "a straightforward reading of the Supreme Court's 2004 decision in *Jones*" compels finding the four-year limitations period applies to the plaintiff's wrongful termination claim via § 1981 against a state employer); *Nicholson v. W.L. York, Inc.*, No. 23-20440, 2024 WL 913378, at *3 (5th Cir. Mar. 4, 2024) (concerning a private employer, but nevertheless observing that "if [the plaintiff's] causes of action arise under a federal statute enacted after December 1, 1990, [the court] must apply a four-year statute of limitations" period).

The unpublished *Jones* case relied upon by Defendants does not change the result.[14] *See Jones v. Texas Juv. Just. Dep't*, 698 F. App'x 215 (5th Cir. 2017). As an unpublished opinion, it does not bind this Court. *Nevarez v. Nevarez*, 664 F. Supp. 3d 680, 694–95 (W.D. Tex. 2023) (citing 5TH CIR. L.R. 47.5.4 (providing, with exceptions not relevant here, that "[u]npublished opinions

---

[13] In *Mitchell*, the Fifth Circuit reasoned that, in view of the Supreme Court's *Jones v. R.R. Donnelley* precedent, any "wrongful termination, refusal to transfer, and hostile work environment related to [ ] then-current employment, [ ] all arose under the 1991 revision to the Civil Rights Act and therefore require[s] the imposition of the federal four-year statute of limitations." *Mitchell*, 265 Fed. Appx. at 368. The Fifth Circuit held that the Civil Rights Act of 1991 "made clear that [the amended] § 1981 reaches post-formation conduct," unlike the previous § 1981. *Id.* at 369.

[14] In that case, the Fifth Circuit affirmed the district court's dismissal of the plaintiff's § 1983 claim as barred by the two-year statute of limitations. *Jones v. Texas Juv. Just. Dep't*, 698 F. App'x 215, 216 (5th Cir. 2017). According to the Fifth Circuit, the plaintiff's alleged injury accrued when the defendant terminated him on December 22, 2011; however, the plaintiff did not file the lawsuit until May 2, 2014, more than two years after the injury. *Id.*

issued on or after January 1, 1996, are not precedent")).[15] Additionally, the Fifth Circuit in *Jones* summarily stated—without any substantive discussion of 28 U.S.C. § 1658's catchall four-year statute of limitations—that the plaintiff's § 1981 claim also failed because, as a claim against a state actor, it is governed by § 1983 and "by the same two-year limitation period." *Jones*, 698 F. App'x at 216. For the reasons discussed above, Stading's official-capacity and individual-capacity claims against Individual Defendants,[16] which are based on post-contract-formation conduct, are governed by the four-year catchall limitations period of 28 U.S.C. § 1658, a statute which was not addressed by the Fifth Circuit in *Jones*. Stading's removal from his position as Dean occurred less than four years before the instant suit was filed. Thus, Stading's claims are not time-barred.

## 4.    Summary

Regarding Stading's claims against Individual Defendants in their official capacities, the District Court should grant Defendants' motion to dismiss under Rule 12(b)(1) in part and hold that sovereign immunity bars any claims for monetary damages, but otherwise deny the motion without prejudice as to any official-capacity claims for prospective relief. Specifically, the District Court should allow Stading the opportunity to amend to more clearly request prospective relief and to allege sufficient facts, to the extent that he can, plausibly alleging that Cutrer and/or Arnold have the authority to reinstate his position as Dean, or if warranted, to seek leave to add the appropriate parties. If this portion of the Report and Recommendation is ultimately adopted by the

---

[15] Nevertheless, this Court generally follows unpublished Fifth Circuit decisions because they indicate how the Fifth Circuit might rule in a future, precedential opinion. *Nevarez*, 664 F. Supp. 3d at 694–95 (citing *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 567 (5th Cir. 2015) (following an unpublished Fifth Circuit opinion as "persuasive authority" while acknowledging that the unpublished case was "not binding circuit precedent")).

[16] Any § 1983 claims against Individual Defendants in their official capacities seeking prospective relief are premised on violation of § 1981. Therefore, the four-year limitations period applicable to Stading's § 1981 (via § 1983) claims also applies to any § 1983 claims seeking prospective relief. *See Jones v. Bd. of Supervisors of the Univ. of Louisiana Sys.*, No. CV 14-2304, 2015 WL 7281614, at *6-7 (E.D. La. Nov. 15, 2015) (stating that if the plaintiff's § 1983 claim was "premised on a claim that would provide a four-year prescriptive period, those claims will also be subject to a four-year prescriptive period").

District Court, Stading shall replead with specificity, to the extent that he can, a claim for prospective relief as outlined above. Any amended complaint should also specify which claims are brought against Individual Defendants in their official capacities and which claims are brought against Individual Defendants in their individual capacities. This shall be done within **thirty days** from the date of any Order Adopting this Report and Recommendation. Defendants may refile this part of their motion to dismiss if warranted, within **fourteen days** after any amended complaint. FED. R. CIV. P. 15(a)(3).

Additionally, the undersigned recommends that all of Defendants' Rule 12(b)(6) challenges concerning Stading's claims against Individual Defendants in their official capacities, including Defendants' argument that all Stading's claims against Individual Defendants be dismissed as time-barred, be denied.

## C.    Individual-capacity claims

### 1.    Assertions

Stading also brings, against individuals alleged to have acted under color of state law, claims to recover damages for alleged racial discrimination that, if asserted against individuals in the private sector, would be actionable under § 1981. So, as explained above, Stading's claims under § 1981 against Individual Defendants in their individual capacities are made under the exclusive federal damages remedy of § 1983. *See Stinson v. McGinnis*, No. 3:23-CV-810-M-BN, 2024 WL 4152703, at *5, *7 (N.D. Tex. Aug. 16, 2024), *report and recommendation adopted*, 2024 WL 4151175 (N.D. Tex. Sept. 11, 2024).

Pursuant to Rule 12(b)(6), Defendants assert these claims fail for two reasons. First, Defendants challenge the sufficiency of Stading's allegations. According to Defendants, Stading fails to allege sufficient facts that, but for race, Stading would not have suffered the loss of a legally

protected right. Defendants also assert the individual-capacity claims against Individual Defendants are barred by qualified immunity.

## 2.    Applicable law

A plaintiff can state a claim under § 1981 against an individual defendant who is not a party to the employment contract where the individual defendant is "essentially the same" as the employer for the purposes of the conduct alleged. *Chung v. Cartier N. Am., Inc.*, No. 3:23-CV-2605-L-BK, 2024 WL 4045774, at *2 (N.D. Tex. Aug. 19, 2024), *report and recommendation adopted*, 2024 WL 4051383 (N.D. Tex. Sept. 4, 2024) (citing *Felton v. Polles*, 315 F.3d 470, 480-81 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). To establish liability against an official in her personal capacity under § 1983, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Murphy v. Beaumont ISD, et al.*, No. 1:22-CV-135, 2024 WL 4293885, at *13 (E.D. Tex. Sept. 25, 2024) (citing *Hitt v. McLane*, 854 F. App'x 591, 594 (5th Cir. 2021) (quoting *Goodman*, 571 F.3d at 395)). "But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Stinson*, 2024 WL 4152703, at *8 (citations omitted).

Qualified immunity shields government officials acting in their discretionary authority "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome qualified immunity a plaintiff must plead facts showing both (1) that the official violated a statutory or constitutional right, and (2) that the right allegedly violated was "clearly established" at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). If the plaintiff fails at either step,

the federal court can grant qualified immunity by addressing either step or both of them." *Murphy*, 2024 WL 4293885, at *14 (citations omitted). When a defendant moves for dismissal pursuant to Rule 12(b)(6) on the basis of qualified immunity, the inquiry is whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Berry I*, 2020 WL 9936141, at *7 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995))).

3.    **Sufficiency of the allegations that, but for race, Stading would not have suffered the loss of a legally protected right**

Defendants assert Stading fails to state a claim for relief that is plausible on its face because Stading has not pleaded any facts that Cutrer and Arnold removed him from the Dean's position "but for" his race. Dkt. No. 17 at 9-10. The Supreme Court has held that a plaintiff who sues under § 1981 "bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020). According to the Court, "while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant." *Id.* The Court held a § 1981 plaintiff, to prevail, "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Id.* at 341.

Having considered the allegations in the amended complaint in the light most favorable to Stading, Stading has pleaded sufficient facts to support the need for a "but-for cause." To start, Stading specifically alleges that "[b]ut-for his race" he would not have suffered the loss of a legally protected right. Dkt. No. 12, ¶¶ 22, 26 (alleging that "[b]ut-for his race" the dismissal would not have occurred, and he would have continued in his role as Dean until his retirement); *see Bailey v. Sand*, No. MO:20-CV-00232-DC, 2021 WL 12303490, at *5 (W.D. Tex. Aug. 3, 2021) (construing the plaintiff's allegation that "but for" his race he would not have suffered the loss of

28

a legally protected right in light most favorable to the plaintiff and finding the plaintiff had pleaded sufficient facts to satisfy this element of a § 1981 retaliation claim).

Defendants argue Stading's allegations are conclusory, and Stading fails to allege specific facts supporting Stading's claim that Cutrer wished to employ fewer White employees. Dkt. No. 23 at 5. However, Stading alleges Cutrer "undertook a campaign" to remake the demographics of the faculty at TAMUT following "national and campus-wide unrest related to race relations." Dkt. No. 12, ¶ 12; *see also id.*, ¶¶ 13, 14 (alleging that "[w]hile a laudable goal to ensure TAMUT's administration reflected the demographics of the larger society and TAMUT's student and overall employee population, Cutrer's campaign violated the federally-protected rights of TAMUT's existing administrators," particularly Stading who was serving as Dean at the time). According to Stading, in service of this goal, Cutrer and Arnold removed Stading from his position as Dean because of his race and replaced him with a "South Asian female." *Id.*, ¶¶ 13-15, 17, 20-21. Stading alleges Cutrer and Arnold terminated Stading despite his excellent employment reviews, two of which occurred within three months of Stading's termination. *Id.*, ¶¶ 15, 18-19. According to Stading, the "only thing that did not meet Cutrer's and Arnold's expectations was [Stading's] race, White." *Id.*, ¶ 20. Stading alleges Individual Defendants' "discriminatory behavior" in dismissing him from his position as Dean on the basis of race "has been the result of racial bias and discrimination by Defendants Cutrer and Arnold." *Id.*, ¶¶ 24, 25. Stading's allegations are sufficient to substantiate an inference that he was discriminated against because of his race, and thus, are sufficient to survive a Rule 12(b)(6) motion to dismiss.

4.    **Qualified immunity**

a.  **Assertions**

Additionally, Individual Defendants have invoked qualified immunity in moving to dismiss Stading's individual-capacity claims. An officer is entitled to qualified immunity if the officer's conduct either did not violate a federal right of the plaintiff or that right was not clearly established at the time of the relevant events. *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (citation omitted). Defendants argue Stading has "completely failed to allege a violation of any statutory or constitutional right," and thus has not met his burden in defeating Individual Defendants' qualified immunity assertion under the first step. Dkt. No. 23 at 3-4; *see also* Dkt. No. 17 at 8. Defendants further assert Stading fails, under the "clearly established" second step, to cite "controlling authority—or a robust consensus of persuasive authority" based on the specific facts of this case that would put a reasonable university administrator on notice that replacing a college dean is unlawful. Dkt. No. 23 at 4 (citing *McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002)).  According to Defendants, "Plaintiff has failed to point to any case law that would put a reasonable university administrator on notice that simply replacing a college dean is somehow unlawful." *Id.* at 3-4.

b.  **Facts showing Individual Defendants violated a statutory or constitutional right**

Contrary to Defendants' assertion, Stading has not completely failed to allege a violation of a statutory or constitutional right. In support of his claim for § 1981 non-employer liability against Individual Defendants, Stading relies on *Foley v. Univ. of Houston Sys.*, 355 F.3d 333 (5th Cir. 2003), a case involving a claim of alleged racial retaliation. Dkt. No. 22 at 5. In that case, the Fifth Circuit held an employee who exercises control over the plaintiff with respect to an employment decision may be individually liable if the employee was "essentially the same" as the

employer in exercising this authority.[17] *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863 (N.D. Tex. 2008) (citing *Foley*, 355 F.3d at 337-38). In *Foley*, two university professors sued a number of their colleagues under § 1981 for racial retaliation in their decision to deny one plaintiff a promotion to full professor and to remove the other from her position as department chair. *Foley*, 355 F.3d at 335-37. The Fifth Circuit permitted the plaintiffs to proceed against the plaintiffs' colleagues individually because they had exercised control in the employment decisions at issue, and thus were indistinguishable with the plaintiffs' employer in those decisions. *Id.* at 337 ("[T]he district court found genuine issues of material fact as to whether the [defendants] exercised control over the faculty positions and titles held by [the plaintiffs]. If so, the [defendants] were 'essentially the same' as [the University of Houston] for purposes of the retaliatory conduct alleged in this case."). The Fifth Circuit agreed with the district court's finding that since at least 1994, an objectively reasonable public official should have been aware of an employee's right to be free from retaliation for complaining about race discrimination in employment. *Id.* at 339. The Fifth Circuit affirmed the district court's finding that Foley had overcome the qualified immunity claims of two colleagues, both of whom had served on a tenure committee and were alleged to have voted against Foley's promotion on more than one occasion in retaliation against Foley for exercising his file to file an EEOC charge of discrimination. *Id.* at 340.

Although this case involves a claim of racial discrimination rather than retaliation, Stading alleges Individual Defendants exercised control over his faculty position and that they were personally involved in the alleged discriminatory action. Specifically, Stading alleges Cutrer oversaw TAMUT's administration "as the highest ranking Official" and that Arnold was

---

[17] Generally, the individual must also have been personally involved in the discriminatory activity to be considered "essentially the same" as the employer. *Molina v. Etech Glob. Servs. L.L.C.*, No. 9:21-CV-290-MJT-CLS, 2022 WL 17549806, at *2 (E.D. Tex. Dec. 9, 2022) (citations omitted).

TAMUT's Provost and Vice President for Academic Affairs at the time of the alleged action. Dkt. No. 12, ¶¶ 3-4, 11. Stading alleges both Cutrer and Arnold provided positive reviews of his performance as Dean. *Id.*, ¶¶ 18-19. According to Stading, despite his excellent record of achievement and success in his role, Cutrer and Arnold decided to replace Stading as Dean. *Id.*, ¶ 15. Stading alleges that at his "dismissal meeting," Arnold provided Stading a pre-written resignation and informed Stading he would be involuntarily dismissed as Dean if he did not resign, but after Stading refused to resign Arnold terminated his position as Dean. *Id.*, ¶¶ 16-17.

Taking the allegations as true, Cutrer and Arnold exercised control over Stading's faculty position by deciding whether to replace him as Dean. Therefore, Cutrer and Arnold were "essentially the same" as TAMUT for purposes of the discriminatory conduct alleged in this case. *Foley*, 355 F.3d at 338; *see also Wei-Ping Zeng v. Texas Tech Univ. Health Scis. Ctr. at El Paso*, No. EP-19-CV-99-KC, 2019 WL 4565101, at *7 (W.D. Tex. July 29, 2019) (finding the plaintiff's allegations that "Dr. Rotwein and Dr. Lange exercised control over Plaintiff's employment by deciding whether to terminate him" sufficient to plead that Dr. Rotwein and Dr. Lange is "essentially the same" as that of TTUHSCEP for the purposes of § 1981); *see also Chung*, 2024 WL 4045774, at *3 (finding allegations that the individual defendants were essentially an arm of and "one and the same as" the employer, that they "can and do control Plaintiff's working conditions, control her at will employment," had "authority to end that contract and/or make alterations to it on behalf of Cartier," and were "the primary agents and arms of Cartier tasked with controlling Plaintiff's employment" were sufficient to survive a motion to dismiss).

However, if defendants assert qualified immunity, a court must consider each official's actions separately, on an expedited basis, "because qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial.'" *Stinson*, 2024 WL

4152703, at *8 (citations omitted). The district court need not allow any discovery unless it finds that plaintiff has supported his claim with *sufficient precision and factual specificity* to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). In *Foley*, for example, the plaintiff's complaint addressed each official's alleged actions with particularity and factual specificity. In that case, the record before the Fifth Circuit which supported the district court's finding that Foley had overcome the two colleagues' claims to qualified immunity included that (1) Prince and her allies (including Carlson) were angry about Foley's successful charge of race discrimination; (2) Prince and Carlson demonstrated continuing hostility toward him and attempted to undermine his standing at UHV; (3) Carlson was on the Tenure and Promotion Committee in 1997 and 1999 and Prince was on the Committee in 1998, in each instance voting against promotion for Foley; and (4) "the promotion decision was at all times under the indirect and secret control of Dr. Prince." *Foley*, 355 F.3d at 340.

Here, unlike in *Foley*, Stading fails to plead facts with sufficient precision and factual specificity alleging Cutrer and Arnold separately and individually violated his rights in a way that each individual should have known was unlawful. Therefore, Stading's amended complaint is not currently pleaded in such a manner that would overcome Individual Defendants' defense of qualified immunity. However, because Stading might be able to cure this deficiency, he should be allowed to amend. *Paternostro v. Custer*, No. 4:15CV71-RC-CMC, 2016 WL 11473560, at *12 (E.D. Tex. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1054728 (E.D. Tex. Mar. 17, 2016) (quotation marks and citation omitted); *see also McKay v. LaCroix*, 117 F.4th 741, 745 (5th Cir. 2024) (noting the district court had granted the plaintiff leave to amend her complaint to allege facts tailored to qualified immunity and then later denied two defendants' assertions of

qualified immunity in their refiled motion to dismiss); *see also Berry v. Texas Woman's University*, *et al.*, Cause No. 4:19cv409-RWS-CAN, Dkt. No. 46 (finding the plaintiff's amended complaint failed to clarify each individual defendant's alleged conduct "and respond with specific, concrete facts demonstrating each Individual Defendant is not entitled to a qualified-immunity defense" and ordering the plaintiff to file a reply, under Federal Rule of Civil Procedure 7(a) as to the individual defendants' assertion of qualified immunity delineating "specific, concrete facts and dates that support the allegations made in Plaintiff's Amended Complaint"); *see also Rios v. City of Corsicana*, No. 3:23-CV-00336-S (BT), 2024 WL 4229993, at *8 (N.D. Tex. Aug. 9, 2024), *report and recommendation adopted*, 2024 WL 4229295 (N.D. Tex. Sept. 17, 2024) (recommending the district court allow the plaintiff to file an amended complaint tailored to the officer's assertion of qualified immunity and further explaining that the amended complaint could accomplish the requirements of a Rule 7(a) reply).[18]

### c. Facts showing the right allegedly violated was "clearly established" at the time of the alleged violation

Defendants further assert Stading has failed to point to any case law that would put a reasonable university administrator on notice that "simply replacing a college dean" is unlawful. Dkt. No. 23 at 3-4. As an initial matter, Stading has alleged more than Individual Defendants

---

[18] According to the court in *Rios*, "although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, '[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail' pursuant to Rule 7(a)." *Rios*, 2024 WL 4229993, at *8 (quoting *Sanders v. Lieutenant Mike Vincent*, No. 3:15-CV-2782-D, 2016 WL 5122115, at *6 (N.D. Tex. Sept. 21, 2016) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc))). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* (quoting *Sanders*, 2016 WL 5122115, at *6 (citing *Schultea*, 47 F.3d at 1433)). "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Id.* (quoting *Sanders*, 2016 WL 5122115, at *6 (citing *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999))). Moreover, the "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Id.* (quoting *Sanders*, 2016 WL 5122115, at *6 (citing *Schultea*, 47 F.3d at 1434; *Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses."))).

"simply replac[ed]" him as Dean. As discussed in detail above, Stading alleges he was replaced because of his race. Additionally, Stading cites *Foley* "and its progeny" as cases which have placed the statutory or constitutional question beyond debate.[19] Dkt. No. 22 at 6. Based on those cases, Stading asserts "Cutrer and Arnold objectively should have been aware of Plaintiff's well-settled right to be free of race discrimination in connection with his employment." *Id.* The Court agrees.

Following *Foley*, courts have held that the right to be free from racial discrimination in employment is clearly-established. *Wei-Ping Zeng*, 2019 WL 4565101, at \*7[20] (citing *Crawford v. City of Houston*, 260 F. App'x 650, 652 (5th Cir. 2007) (holding § 1981 makes discriminatory promotion decisions unlawful); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1372 (5th Cir. 1992) (holding racial discrimination in employment after contract formation is actionable under § 1981); *Harris v. City of Balch Springs*, 9 F. Supp. 3d 690, 703 (N.D. Tex. 2014) (discussing, among other cases, *Foley* and holding the ability to bring a race discrimination claim against supervisors in their individual capacities pursuant to § 1981 to be clearly established at the time the plaintiff was terminated in May 2011)). In *Zhang v. Bd. of Regents of Univ. Sys. of Georgia*, No. 3:23-CV-149 (CDL), 2024 WL 3939099 (M.D. Ga. Aug. 26, 2024), a case involving claims of retaliation and racial discrimination, the court held the department head and dean were not entitled to qualified

---

[19] "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) (citation omitted). This does not mean that "a case directly on point" is required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 299–300 (5th Cir. 2023) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[20] The plaintiff in *Wei-Ping* was a Chinese native hired as a research associate by the defendant Texas Tech University Health Sciences Center at El Paso ("TTUHSCEP"). *Wei-Ping Zeng*, 2019 WL 4565101, at \*1. The plaintiff worked from home but was later counseled to return to El Paso. The plaintiff was terminated the week prior to his return to El Paso. *Id.* The plaintiff later discovered that the department chair had written TTUHSCEP president a letter recommending TTUHSCEP immediately terminate Plaintiff. *Id.* The president signed the letter authorizing the plaintiff's termination without any prior disciplinary action from the university. *Id.* The plaintiff alleged that other Asian employees of TTUHSCEP were terminated or forced to resign and that all had received good performance reviews, whereas non-Asian employees with discrepancies between their timesheets and building access records were not terminated. *Id.* at \*2.

immunity at the motion to dismiss stage. *Id.* at *1. According to the court in *Zhang*, it was clearly established before 2020 that § 1981 prohibits a supervisor from taking an adverse employment action against an employee because of her race. *Id.* at *5.

Similarly here, Stading alleges he was removed from his position as Dean despite his excellent employment reviews, two of which occurred within three months of Stading's termination. Stading sufficiently shows that any constitutional violation was clearly established at the time of the allegedly violating conduct.

**5.    Summary**

Regarding Stading's claims against Individual Defendants in their individual capacities under § 1981, the District Court should deny Defendant's Rule 12(b)(6) motion as to the sufficiency of allegations that, but for race, Stading would not have suffered the loss of a legally protected right. However, the District Court should deny without prejudice Defendants' Rule 12(b)(6) motion as to Individual Defendants' qualified-immunity defense. The District Court should allow Stading to file an amended complaint tailored to Individual Defendants' assertions of qualified immunity. Individual Defendants may seek consideration of their qualified-immunity defense in renewing their motion to dismiss, or later in the case as appropriate.

If this portion of the Report and Recommendation is ultimately adopted by the District Court, Stading shall replead with sufficient facts alleging Cutrer and Arnold separately and individually violated his rights in a way that each individual should have known was unlawful and in such a manner that would overcome Individual Defendants' defense of qualified immunity. This shall be done within **thirty days** from the date of any Order Adopting this Report and Recommendation. Defendants may refile this part of their motion to dismiss if warranted, within **fourteen days** after any amended complaint. FED. R. CIV. P. 15(a)(3).

36

## V. TITLE VII CLAIM AGAINST TAMUT

Defendants move to dismiss Stading's Title VII race discrimination claim against TAMUT, arguing Stading failed to exhaust administrative remedies because he did not file a timely administrative charge of discrimination.[21] Dkt. No. 17 at 14-17. Substantively, Defendants assert Stading's Title VII claim should be dismissed for failure to state a claim because Stading fails to plausibly allege an adverse action occurred because of his race. *Id*. at 18.

### A.     Failure to exhaust administrative remedies

### 1.     Assertions

Defendants argue that whether the adverse employment action was Stading's removal as Dean (in July 2021), or the hiring of Stading's replacement (on March 15, 2022), Stading's claims fail because more than 300 days elapsed before Stading filed his Charge of Discrimination with the EEOC (on March 14, 2023). Thus, according to Defendants, Stading failed to timely exhaust his administrative remedies. Dkt. No. 17 at 15 & n. 6.

### 2.     Applicable law

Before suing under Title VII, aggrieved employees must first file a charge of discrimination with the EEOC. *Weathers v. Houston Methodist Hosp*., 116 F.4th 324, 329 (5th Cir. 2024) (citing 42 U.S.C. § 2000e-5(e)(1)). In Texas, the charge must be filed within 300 days after the alleged unlawful act occurred.[22] *Id*. (citations omitted). Among other things, a charge must include information regarding the person against whom the charge is made and "[a] clear and concise

---

[21] Stading did not attach a Notice of Right to Sue to his original or amended complaint.

[22] A plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the "alleged unlawful employment practice." *Willis v. Amifast*, No. 5:23-CV-1408-JKP, 2024 WL 1543232, at *7 (W.D. Tex. Apr. 9, 2024), *appeal dismissed*, No. 24-50313, 2024 WL 4589237 (5th Cir. Aug. 15, 2024) (citing 42 U.S.C. § 2000e-5(e)(1)). "If, as here, the plaintiff instead files with the corresponding state agency, the limitations period extends to 300 days." *Id*. (quoting *Abrams v. Am. Airlines Inc*., 302 F. App'x 242, 243 (5th Cir. 2008) (per curiam) (citing 42 U.S.C. § 2000e-5(e)(1))).

statement of the facts. . . constituting the alleged unlawful employment practices." *Id.* (quoting 29 C.F.R. § 1601.12(a)(3)). A charge must be in writing, signed, and verified. *Id.* (citing 29 C.F.R. § 1601.9). To exhaust, however, a claim need not always arise from the EEOC charge ***form***.[23] *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (emphasis in original). In some circumstances, other documents can serve as a charge. *Id.* (citing *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 405–07 (2008) (the Court determined that a sufficiently detailed and verified intake questionnaire sufficed as a charge under the Age Discrimination in Employment Act)).[24]

The Fifth Circuit recently reiterated that the party asserting exhaustion as an affirmative defense bears the burden in demonstrating non-exhaustion. *Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *3 (5th Cir. Oct. 12, 2023) (citing *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007))). While affirmative defenses, such as non-exhaustion, may be asserted on a 12(b)(6) motion, dismissal on that basis is appropriate only if the defense is evident on the face of the complaint. *Id.* (citing *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006)). The face of the complaint includes matters of public record that courts may properly take judicial notice. *Willis v. Amifast*, No. 5:23-CV-1408-JKP, 2024 WL 1543232, at *8 (W.D. Tex. Apr. 9, 2024), *appeal dismissed*, No. 24-50313, 2024 WL 4589237 (5th Cir. Aug. 15, 2024).

---

[23] The charge typically appears on an agency Form 5. *Sheridan v. Unifi Aviation, L.L.C.*, No. 23-CV-00444-SH, 2024 WL 2864032, at *6 (N.D. Okla. June 6, 2024).

[24] *Holowecki*'s holding "extends to Title VII," and "a questionnaire may qualify as a charge if it satisfies the EEOC's charge-filing requirements." *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753–54 (5th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1048 (2021).

### 3.    Analysis

At first blush, the issue of exhaustion is straightforward. Stading's allegations, which are accepted as true and viewed in the light most favorable to Stading, *Hamilton*, 2023 WL 6635076, at \*3, demonstrate exhaustion. Stading alleges he filed a "Charge of Discrimination" with the EEOC ("2022 Charge") on January 23, 2022, which is within 300 days of the alleged unlawful employment practice. Dkt. No. 12, ¶ 7. Stading also pleads the original charge number (450-2022-02268). *Id.* Stading alleges the 2022 Charge meets the requirements of a "charge" under *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). *Id*. Without stating the specific date, Stading further alleges that he later verified the 2022 Charge as allowed under *Edelman v. Lynchburg College*, 535 U.S. 106 (2002). *Id*. Stading's amended complaint further alleges that "[a]ll conditions precedent to the institution of this suit have been fulfilled and Stading has satisfied all jurisdictional prerequisites to the maintenance of this action." *Id.*; *see also Equal Emp. Opportunity Comm'n v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753 n.4 (5th Cir. 2020) (stating the "fail[ure] to plead with specificity that [claimant] timely filed his charge" was not fatal, as this is a "condition[ ] precedent to suit governed by Rule 9(c), which, . . . c[an] be and w[as] generally pled").

Because the face of the complaint includes matters of public record, Defendants rely on the EEOC filings to argue dismissal is appropriate at this stage.[25] The March 14, 2023 Charge of

---

[25]  In support of their motion, Defendants submitted a Freedom of Information Act response document prepared by the EEOC ("EEOC FOIA response"). Dkt. No. 17-1. Defendants also submitted an EEOC Dismissal and Notice of Rights letter dated February 6, 2024 and attached Charge of Discrimination (No. 450-2023-04179) dated March 14, 2023 ("EEOC filings"). Dkt. No. 17-2. Defendants argue the Court can consider the EEOC FOIA response and EEOC filings—without converting the motion to a motion for summary judgment—because they are referred to in Stading's complaint and are central to his claim of exhaustion of administrative remedies as a precondition to filing suit. Dkt. No. 23 at 7.

The Court considers the EEOC filings, which are incorporated in the complaint by reference and central to Stading's claim, without converting the motion to a motion for summary judgment. The Court also considers the EEOC FOIA

Discrimination ("2023 Charge") attached to Defendants' motion is a matter of public record. *Adams v. Columbia/HCA of New Orleans, Inc*., No. CV 20-3030, 2021 WL 809372, at *2 (E.D. La. Mar. 3, 2021) (stating the court may take judicial notice of EEOC documents as a matter of public record if their authenticity is uncontested").[26] This 2023 Charge was filed after the 300-day period to file a charge complaining of discriminatory conduct. Defendants point out the EEOC itself determined the 2023 Charge was untimely as explained in the Dismissal and Notice of Rights letter.[27] Dkt. No. 17 at 15. According to Defendants, because Stading filed his 2023 Charge beyond the 300 days, he failed to exhaust his administrative remedies. *Id.*

Even though the 2023 Charge was not timely filed, it can be considered an "amended charge" if it relates back to amend a timely filed charge. *Baker v. Legal*, No. 4:20-CV-03870, 2022 WL 22608240, at *4 (S.D. Tex. July 21, 2022) (citing *Manning v. Chevron Chem. Co., L.L.C.*, 332 F.3d 874, 878 (5th Cir. 2003) (cleaned up) (explaining that EEOC regulations allow a claimant to "relate back" an untimely charge to a timely filed charge of discrimination "[i]f the amendments involve acts that relate to or grow out of the subject matter of the original charge")). Therefore, "[t]o the extent Plaintiff submitted an intake questionnaire or other statement that did not include

---

response as it is arguably central to Stading's contention that he exhausted his administrative remedies. *See Sheridan v. Unifi Aviation, L.L.C.*, No. 23-CV-00444-SH, 2024 WL 2864032, at *1, *4 (N.D. Okla. June 6, 2024) (noting some of the documents relied upon by the defendant from the EEOC's response to a FOIA request were at least arguably central to the plaintiff's contention that she exhausted her administrative remedies, and finding the defendant's motion failed even considering the documents). Like the court in *Sheridan*, the Court finds Stading has adequately pleaded that he filed a timely charge sufficient to survive a motion to dismiss, and the EEOC FOIA response documents submitted by Defendants do not show otherwise. *Id.* at *4, *6.

[26] Despite Stading's objection to the Court's consideration of the additional documents (Dkt. No. 22 at 4, 13), Stading does not appear to challenge the authenticity of the February 6, 2024 Dismissal and Notice of Rights letter or the 2023 Charge attached to the letter.

[27] In the Dismissal and Notice of Rights letter, Stading was advised that the EEOC was "closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge." Dkt. No. 17-2 at 1. The letter goes on to give Stading "Notice of [Stading's] Right To Sue," in which the EEOC informs Stading that he must "file a lawsuit against the respondent(s) on this charge under federal law" within 90 days. *Id.*

any specific requirement, th[is] later submitted, verified Form 5 amends it to cure any technical defects that relates back to the date of the intake questionnaire (including verification itself)." *Andrews*, 2024 WL 4291521, at *8 (citing 29 C.F.R. § 1601.12(b)). Stading claims that is what happened here: His 2022 Charge was a "detailed letter to the EEOC identifying his employer and explaining the basis for his complaint against it," and he submitted the verified Form 5 2023 Charge to cure the lack of verification of his original, timely-filed 2022 Charge. Dkt. No. 22 at 12.

A similar situation was found sufficient to defeat a motion for summary judgment. In *Edelman*, the respondent college denied academic tenure to the petitioner, who faxed a letter to an EEOC field office on November 14, 1997, claiming employment discrimination. *Edelman*, 535 U.S. at 109. The district court found the timely-filed letter was not a "charge" within the meaning of Title VII because neither the petitioner nor the EEOC treated it as one, "with the consequence that there was no timely filing to which the verification on Form 5 could relate back." *Id.* at 110. The was affirmed on appeal. *Id.* The Supreme Court remanded to the Fourth Circuit to determine whether the initial letter was itself a "charge" that triggered the relation-back provision in the regulation.[28] *Henderson v. Wal Mart Stores Texas, L.L.C.*, No. CIV.A. H-10-0317, 2010 WL 1525551, at *5 (S.D. Tex. Apr. 14, 2010) (citing *Edelman*, 535 U.S. at 118–19). On remand, the Fourth Circuit, treating the college's motion as a motion for summary judgment, considered whether the district court erred in ruling that the letter was not a valid charge to which the verified Form 5 charge could relate. *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 403-04 (4th Cir. 2002). The Fourth Circuit held the college failed to demonstrate as a matter of law that the unverified letter was not an otherwise valid charge to which the Form 5 could relate back. *Id.* at 405.

---

[28] In *Edelman*, the Supreme Court reversed the lower court and held EEOC regulation, 29 C.F.R. § 1601.12(b), is a valid interpretation of the statutory exhaustion requirements. *Edelman v. Lynchburg College*, 535 U.S. 106, 118 (2002).

Like in *Edelman*, Defendants assert the letter did not constitute a charge because the EEOC did not treat it as a formal charge. *See* Dkt. No. 17 at 2 n.3 (stating "Plaintiff never perfected the alleged January 2022 charge, and the EEOC issued a new and different charge number to the March 2023 Charge of Discrimination"). According to Defendants, the EEOC treats different case numbers as a separate and new charge rather than as an amendment to a previous charge. *Id*. at 16 (citing *Univ. of Tex. v. Poindexter,* 306 S.W.3d 798, 804-05 (Tex. App.—Austin 2009, no pet.) ("[t]his form received a different charge number from the first, indicating that the EEOC treated as a new and separate charge rather than as an amendment to the first charge.")). This argument is unpersuasive.

The EEOC's characterization of a submission is not dispositive. Rather, what constitutes a charge is determined by objective criteria. *Vantage Energy*, 954 F.3d at 755 (citing *Holowecki*, 552 U.S. at 404 ("It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control.")). According to the Fifth Circuit, while a state agency's characterization may assist in the analysis of a filing's sufficiency, the objective standard announced in *Holowecki* controls. *Id.*

Defendants further suggest, in a footnote in their motion, that Stading's letter was substantively deficient. In the event the letter constitutes a charge, Defendants assert the alleged discrimination, according to the amended complaint, did not occur until the new dean was hired, which was in March 2022—*three months after the January 2022 letter*.[29] Dkt. No. 17 at 16 n. 9. Thus, according to Defendants, "the January 2022 Charge of Discrimination would not have a

---

[29] Viewing Stading's "detailed letter of complaint" in the light most favorable to Stading, Stading already knew about his replacement at the time he sent the letter on January 23, 2022, asking for a right to sue. In the 2023 Charge, Stading states Defendant Arnold, on December 22, 2021, "announced the hiring of" Dr. Choudhary, who "is not a white male" and is an "underqualified DEI candidate," as Stading's replacement as Dean. Dkt. No. 17-2 at 7 (further stating the new dean was "to join the organization on March 15, 2022"). Thus, Defendants' argument is unpersuasive.

basis to invoke Title VII." *Id.* However, as noted above, "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of," within 300 days. *Weathers*, 116 F.4th at 329 (quoting 29 C.F.R. § 1601.12(b)). After that point, "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *Id.* The relation-back provision in § 1601.12(b) further provides that "amendments alleging ***additional acts*** which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b) (emphasis added).

Similar to the plaintiff in *Edelman*, Stading asserts the timely-filed, detailed letter he filed with the EEOC constitutes a "charge" with the EEOC and that his verified Form 5 2023 Charge amended the 2022 Charge to cure the lack of verification. Dkt. No. 22 at 12 (representing in his response that the "detailed letter" identified his employer and explained the basis for his complaint against it); Dkt. No. 12, ¶ 7. Stading referred to the letter in the 2023 Charge and provided the "original assigned Charge Number [of] 450-2022-02268." Dkt. No. 17-2 at 7. He also stated he was filing the 2023 Charge as an amendment to his 2002 letter. *Id.*

Further considering that Defendants bear the burden of pleading and proving Stading has failed to exhaust administrative remedies, dismissal is not appropriate at this early stage. *Baker v. Lone Star Legal Aid*, No. 4:20-CV-3870, 2022 WL 558054, at *2 (S.D. Tex. Feb. 24, 2022). The parties' arguments are more properly suited for resolution later in the case. *Sheridan v. Unifi Aviation, L.L.C.*, No. 23-CV-00444-SH, 2024 WL 2864032, at *7 (N.D. Okla. June 6, 2024); *see also Baker*, 2022 WL 558054, at *2; *see also Edelman*, 300 F.3d at 403-04 (on remand, the Fourth

Circuit treating the college's motion as a motion for summary judgment). The Court recommends Defendants' motion to dismiss for failure to exhaust administrative remedies be denied.

## B.    Sufficiency of the allegations

### 1.    Assertions

Finally, Defendants argue Stading fails to plead a proper claim against TAMUT under Title VII. According to Defendants, "Plaintiff has wholly failed to plead facts establishing that Plaintiff's removal from the Dean's position had anything to do with his race," and the "fact that a South Asian female was hired as Dean several months after his removal, is insufficient, standing alone to plausibly allege. . . that an adverse action occurred because *of* his race." Dkt. No. 17 at 18 (citation omitted) (emphasis in original).

### 2.    Applicable law

As stated, a plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion. *Woods v. Louisiana Special School District*, No. CV 23-3083, 2023 WL 8370382, at *7 (E.D. La. Dec. 4, 2023) (citing *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). Nevertheless, a plaintiff must plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible. *Id*. (citing *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019)). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'"[30] *Cicalese*, 924 F.3d at 767 (quoting *Raj*, 714 F.3d at 331). In other words, a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's]

---

[30] A protected status is an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). This includes white males, whether they are part of the minority or majority. *Hawn v. Exec. Jet Mgmt., Inc*., 546 F. Supp. 2d 703, 717 (D. Ariz. 2008), *aff'd*, 615 F.3d 1151 (9th Cir. 2010) (citing *Aragon v. Republic Silver State Disposal Inc*., 292 F.3d 654, 659 (9th Cir. 2002) (citing *McDonald v. Santa Fe Trail Trans. Co*., 427 U.S. 273, 278–79 (1976))).

race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably." *Jones v. Grapeland Indep. Sch. Dist.*, No. 923CV00059MJTZJH, 2024 WL 1228988, at *12 (E.D. Tex. Feb. 16, 2024), *report and recommendation adopted*, No. 9:23-CV-00059-MJT-ZJH, 2024 WL 1219975 (E.D. Tex. Mar. 21, 2024), *aff'd*, No. 24-40194, 2024 WL 4490604 (5th Cir. Oct. 15, 2024).

In cases involving circumstantial evidence, the Fifth Circuit has counseled that "it can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *York v. Ahuja*, No. SA-22-CV-00451-XR, 2023 WL 3996914, at *4 (W.D. Tex. June 13, 2023) (quoting *Cicalese*, 924 F.3d at 767 (citing *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470-71 (5th Cir. 2016) (considering whether the plaintiff pleaded facts suggesting that the employer hired an applicant who was "similarly situated" to the plaintiff or "less qualified" than the plaintiff in accordance with the *McDonnell Douglas* framework))). Still, courts must not inappropriately heighten the pleading standard in Title VII cases by "subjecting plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese*, 924 F.3d at 767 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (explaining "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'")). "Such inquiries are better suited to summary judgment." *Id.* (citing *Thompson v. City of Waco*, 764 F.3d 500, 506 (5th Cir. 2014) (explaining "that further assessment of [appellant's] claim is fact-intensive and better suited for the summary-judgment or trial stage")).

3.    **Analysis**

Stading's allegations are sufficient to state a Title VII discrimination claim at this early stage of the litigation. Stading alleges he is a white male who was qualified for his position, that he was removed from his position because of his race, and that a female, South Asian woman was given his position. According to Stading, despite receiving positive performance reviews from Individual Defendants in the months prior to his dismissal as Dean, he was replaced because of his race and as a result "of racial bias and discrimination by Defendants." Dkt. No. 12, ¶¶ 18, 20, 25, 31. Stading has further alleged that the adverse employment action taken against him was motivated by a campaign to remake TAMUT's demographics in the "wake of national and campus-wide unrest related to race relations." *Id*., ¶ 12.

Defendants argue Stading's allegations are "speculative and conclusory that an alleged campaign about 'demographics,' a vague and ambiguous term, which Stading did not plead included race, was involved in any decision related to his removal." Dkt. No. 17 at 10. According to Defendants, Stading has not pleaded facts asserting Dr. Choudary's race was the alleged preferred race in "this so-called demographics campaign." *Id.*

However, the facts alleged in the amended complaint are more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Thomas v. Dallas Indep. Sch. Dist*., No. 23-10882, 2024 WL 2874367, at *5 (5th Cir. June 7, 2024) (quoting *Iqbal*, 556 U.S. at 678). They raise at least an inference that Stading was dismissed as Dean—and later replaced by a non-white female—due to his race. Whether he can make out a *prima facie* case and whether TAMUT had non-discriminatory reasons for the dismissal and for hiring the "South Asian female" are not questions to be resolved on a motion to dismiss. *Id.*

At this stage of the proceedings, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss. *See Cicalese*, 924 F.3d at 768. Following *Cicalese*, all that is required at the motion to dismiss stage is that the plaintiff plead facts that support an inference that the adverse employment action was taken against the plaintiff because of his protected status, which here, is his race. *See Thomas*, 2024 WL 2874367, at *5 (citing *Cicalese*, 924 F.3d at 767) (quotation marks and emphasis omitted). Stading has alleged sufficient facts, interpreted in the light most favorable to him, regarding whether an adverse employment action was taken against him because of his protected status and "nudged [his] claims across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768; *see also Greig v. Texas A&M Univ. Texarkana*, No. 5:23-CV-00030-JRG-JBB, 2024 WL 647414, at *6 (E.D. Tex. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 643228 (E.D. Tex. Feb. 15, 2024). Because Stading's allegations are sufficient to state a Title VII discrimination claim at this early stage of the litigation, the undersigned recommends TAMUT's motion to dismiss for failure to state a claim be denied.

## VI. RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 17) be **GRANTED IN PART and DENIED IN PART**. It is

**RECOMMENDED** that Defendants' Rule 12(b)(1) motion to dismiss be granted to the extent Stading is attempting to seek monetary damages against Individual Defendants in their official capacities. Such relief is barred by sovereign immunity, and the Court therefore lacks subject matter jurisdiction over any such claims. It is further

**RECOMMENDED** that Defendants' Rule 12(b)(1) motion to dismiss any prospective claims for relief against Individual Defendants in their official capacities be denied without prejudice to refiling and that Stading be allowed to amend to more clearly request prospective relief and to allege sufficient facts, to the extent that he can, plausibly alleging that Cutrer and/or Arnold have the authority to reinstate his position as Dean, or if warranted, to seek leave to add the appropriate parties. Any amended complaint must be filed within **thirty days** from any Order Adopting this Report and Recommendation.  It is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss Stading's claims against Individual Defendants in their individual capacities based on qualified immunity be denied without prejudice to refiling and that Stading be ordered to amend with sufficient facts alleging Cutrer and Arnold violated his rights in a way that each individual should have known was unlawful and in such a manner that would overcome Individual Defendants' defense of qualified immunity. Any amended complaint must be filed within **thirty days** from any Order Adopting this Report and Recommendation. Finally, it is

**RECOMMENDED** that the remainder of Defendants' Rule 12(b)(6) motion be denied.

<u>Objections</u>

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 18th day of February, 2025.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE